IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:18cr022 |
| Plaintiff, | : | THOMAS M. ROSE |
| v. | : | |
| LEONARDO WOLF TARGINO (1) | : | **INDICTMENT**<br>18 U.S.C. §§ 371 and 1349<br>**FORFEITURE** |
| DIEGO M. DACOSTA (2) | : | |
| RICARDO CARLOS DE ANDRADE (3) | : | |
| SANDRO LOPES TRANCOSO DA SILVA (4) | : | |
| Defendants. | | |

**THE GRAND JURY CHARGES THAT:**

**COUNT 1**
**[18 U.S.C. §§ 371 and 1349]**

**THE CONSPIRACY AND ITS OBJECTS**

1. Beginning on an exact date unknown, but at least by on or about December 1, 2017 and continuing up to and including on or about January 25, 2018, in the Southern District of Ohio and elsewhere, defendants, **LEONARDO WOLF TARGINO, DIEGO M. DACOSTA, RICARDO CARLOS DE ANDRADE** and **SANDRO LOPES TRANCOSO DA SILVA**, together with others both known and unknown to the Grand Jury, did knowingly and willfully, combine, conspire, confederate and agree together, to commit certain offenses against the United States to include:

   a. Knowingly and without lawful authority produce an identification document, authentication feature and false identification document in violation of 18 U.S.C. §§ 1028(a)(1) and 1028A.

b.     Knowingly transfer an identification document, authentication feature and false identification document knowing that such document or feature was stolen or produced without lawful authority in violation of 18 U.S.C. §§ 1028(a)(2) and 1028A.

c.     Knowingly produce, transfer and possess a document-making implement or authentication feature with the intent such document-making implement or authentication feature would be used in the production of a false identification document or another document-making implement or authentication feature, in violation of 18 U.S.C. §§ 1028(a)(5) and 1028A.

d.     Knowingly transfer, possess and use without lawful authority a means of identification of another person with the intent to commit, to aid or abet in connection with any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law in violation 18 U.S.C. §§ 1028(a)(7).

e.     Knowingly and with intent to defraud, produce, use and traffic in one or more counterfeit access device in violation of 18 U.S.C. §§ 1029(a)(1) and 1028A;

f.     Knowingly and with intent to defraud traffic in and use one or more unauthorized access device during any one-year period, and by such conduct obtain anything of value aggregating $1,000 or more during said period, in violation of 18 U.S.C. §§ 1029(a)(2) and 1028A;

g.     Knowingly and with the intent to defraud possess in excess of 15 unauthorized and counterfeit access devices in violation of 18 U.S.C. §§ 1029(a)(3) and 1028A;

h.     Knowingly and with intent to defraud, produce, traffic in and have custody and control of and possess device-making equipment in violation of 18 U.S.C. §§ 1029(a)(4) and 1028A;

i.     Knowingly and with intent to defraud, use, produce, traffic in, have control and custody of and possess one or more scanning receivers in violation of 18 U.S.C. §§ 1029(a)(8); and 1028A;

j.     Engage in acts of mail fraud and related aggravated identity theft in violation of 18 U.S.C. §§ 1341 and 1028A.

k.     Engage in acts of wire fraud and related aggravated identity theft in violation 18 U.S.C. §§ 1343 and 1028A.

## MANNER AND MEANS OF THE CONSPIRACY

2. It was part of the conspiracy that:

   a. The defendants made arrangements to rent motor vehicles in South Florida for the purpose of traveling throughout various states to include North Carolina, New York, Ohio, Illinois, and Michigan.

   b. While traveling throughout said states, the defendants utilized the services of FedEx, a commercial interstate carrier, to receive packages sent from South Florida based co-conspirators. These packages contained hundreds of counterfeit American Express, Master Card and Visa credit cards with pre-embossed alias names, to include "Richard Martin" and "Felipe Mello," together with account numbers. These counterfeit credit cards purported to originate from over 50 different domestic and overseas financial institutions.

   c. While traveling throughout said states, the defendants utilized interstate e-mail communications to purchase and receive counterfeit credit card tracking information from their South Florida co-conspirators. The defendants would thereafter encode this tracking information onto the magnetic strips contained on the reverse sides of the counterfeit credit cards.

   d. In order to activate the pre-embossed counterfeit credit cards, the defendants utilized various device-making equipment to include lap top computers and magnetic credit card stripe reader/writer encoder machines.

   e. The defendants would thereafter use the activated counterfeit credit cards to make fraudulent purchases of various retail goods to include clothing, luggage, watches, jewelry, and miscellaneous electronic merchandise; hotel accommodations; food; rental cars; and other associated travel expenses. The defendants would additionally make arrangements to ship via FedEx, packages containing illicitly purchased retail goods back to their South Florida co-conspirators who in-turn would re-sell them on the internet.

   f. The defendants would illicitly and secretly install ATM skimming devices and pinhole cameras on commercial ATM machines in order to scan and obtain from unsuspecting credit and debit card holders, their account names, account numbers and personal identification numbers for future illegal use by the defendants and their co-conspirators.

//

//

//

3

## OVERT ACTS

In furtherance of the conspiracy and to affect its objects, thereof one or more of the above named defendants, committed at least one of the following overt acts while in the Southern District of Ohio:

a. On or about January 22, 2018, defendant **DIEGO M. DACOSTA,** using a counterfeit credit card bearing the alias name "Felipe Mello" rented a Nissan Armada automobile bearing Florida tags 166-YTH from National Car Rental Co. in Chicago, Illinois.

b. On or about January 6, 2018, defendant **RICARDO CARLOS DE ANDRADE,** using a counterfeit credit card bearing the alias name "Felipe Mello" rented a Chevrolet Tahoe automobile bearing Florida tags 952-LZD from Alamo Car Rental Co. in Miami, Florida.

c. Between the approximate time frame of December 1, 2017 and January 25, 2018, defendants **LEONARDO WOLF TARGINO** and **DIEGO M. DACOSTA** traveled in various rental vehicles from South Florida to New York, New York; Rochester, New York; Buffalo, New York; Cleveland, Ohio; Detroit, Michigan; Chicago, Illinois and Dayton, Ohio.

d. Between the approximate time frame of January 6, 2018 and January 25, 2018, defendants **RICARDO CARLOS DE ANDRADE** and **SANDRO LOPES TRANCOSO DA SILVA,** traveled in a rental vehicle from Miami, Florida; Charlotte, North Carolina; Cleveland, Ohio; Detroit, Michigan; Chicago, Illinois and Dayton, Ohio.

e. Between the approximate time frame of January 6, 2018 and January 25, 2018, defendants **LEONARDO WOLF TARGINO, DIEGO M. DACOSTA, RICARDO CARLOS DE ANDRADE** and **SANDRO LOPES TRANCOSO DA SILVA,** personally met and communicated with each other in Cleveland, Ohio; Detroit, Michigan; Chicago, Illinois and Dayton, Ohio.

f. On or about January 25, 2018, defendants **LEONARDO WOLF TARGINO, DIEGO M. DACOSTA, RICARDO CARLOS DE ANDRADE** and **SANDRO LOPES TRANCOSO DA SILVA,** personally met at a Valero gas station located at or near Miller Lane, in Dayton, Ohio.

g. On or about January 25, 2018, defendants **LEONARDO WOLF TARGINO, DIEGO M. DACOSTA, RICARDO CARLOS DE ANDRADE** and **SANDRO LOPES TRANCOSO DA SILVA,** personally met at an Outback Steak House located on Miller Lane, in Dayton, Ohio.

h. On or about January 25, 2018, defendants **LEONARDO WOLF TARGINO** and **DIEGO M. DACOSTA** occupied the aforesaid rented Nissan Armada automobile occupied by at or near Miller Lane, in Dayton, Ohio.

i. On or about January 25, 2018, the aforesaid rented Nissan Armada automobile contained a large quantity of retail merchandise acquired with counterfeit access devices.

j. On or about January 25, 2018, defendants **LEONARDO WOLF TARGINO** and **DIEGO M. DACOSTA** possessed one or more counterfeit access devices on their persons while in the vicinity of Miller Lane, in Dayton, Ohio.

k. On or about January 25, 2018, the aforesaid rented Chevrolet Tahoe automobile was observed to be occupied by defendants **RICARDO CARLOS DE ANDRADE** and **SANDRO LOPES TRANCOSO DA SILVA**, at or near Miller Lane, in Dayton, Ohio.

l. On or about January 25, 2018, the aforesaid rented Chevrolet Tahoe automobile contained a large quantity of retail merchandise acquired with counterfeit access devices.

m. On or about January 25, 2018, the aforesaid rented Chevrolet Tahoe automobile contained one or more ATM skimmer devices and pinhole cameras.

n. On or about January 25, 2018, defendants **RICARDO CARLOS DE ANDRADE** and **SANDRO LOPES TRANCOSO DA SILVA**, possessed one or more counterfeit access devices while in the vicinity of Miller Lane, in Dayton, Ohio.

All in violation of 18 U.S.C. §§ 371 and 1349.

## FORFEITURE ALLEGATION ONE

Upon conviction of Count One of this Indictment, defendants **LEONARDO WOLF TARGINO, DIEGO M. DACOSTA, RICARDO CARLOS DEANDRADE** and **SANDRO LOPES TRANCOSA DASILVA** shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property which constitutes or is derived from proceeds traceable to the violation alleged in Count One; and pursuant to 18 U.S.C. § 982(a)(2), any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such violation, including but not limited to the items listed in Exhibit A, attached hereto and incorporated herein.

## **SUBSTITUTE ASSETS**

If any of the property described in the forfeiture allegation above, as a result of any act or omission of the defendant(s):

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property.

A TRUE BILL

/s/ signed
FOREMAN

BENJAMIN C. GLASSMAN
United States Attorney

DWIGHT K. KELLER
Assistant United States Attorney

6

# EXHIBIT A

1. Apple iPhone white/gold with clear case, recovered from **LEONARDO WOLF TARGINO**;

2. Apple iPhone black with gold case, recovered from **DIEGO M. DACOSTA**;

3. Apple iPhone black, shattered, recovered from **RICARDO CARLOS DE ANDRADE**;

4. Apple iPhone black with clear case with SIM card lodged inside clear case, recovered from **SANDRO LOPES TRANCOSO DA SILVA**;

5. HP Laptop, Serial No. CND6306CXR

6. Pin Hole Camera containing a SanDisk Ultra Plus, 32GB;

7. T Mobile Sim Card, Serial No. 8901260142705280457;

10. Vivo 4G Sim Card, Serial No. 8955109334;

11. T-Mobile Sim Card, Serial No. 8901260911795426125;

12. MSR Card Reader, Serial No. A517052440;

13. HP Laptop, Serial No. CND7194DT9;

14. T-Mobile Sim Card, Serial No. 8901260985775565193;

15. Card Reader, Serial No. US01421F15;

16. Vivo 4G Sim Card, Serial No. 8955109314;

17. Vivo 4G Sim Card, Serial No. 8955109344;

18. T Mobile Sim Card, Serial No. 8901260911795425994F; and

19. Lenovo Laptop, Serial No. PFOLLTTB.